UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TIG INSURANCE COMPANY,                §
                                      §
        Plaintiff,                    §
                                      §
V.                                    §   CIVIL ACTION NO. 3:04-CV-1307-B
                                      §
AON RE, INC.,                         §
                                      §
        Defendant.                    §

## MEMORANDUM ORDER

Before the Court are the Motion of Plaintiff TIG Insurance Company ("TIG") for Partial

Summary Judgment and the Motion of the Defendant Aon Re, Inc. ("Aon Re") for Summary

Judgment on the entirety of the Plaintiff's claims against it, both filed on June 7, 2005.  Having

reviewed the pleadings and evidence on file, the Court DENIES TIG's Motion and GRANTS Aon

Re's Motion in its entirety, for the reasons that follow.

## I. BACKGROUND FACTS[1]

### A.   Aon Re Negotiates the Reinsurance Agreement with U.S. Life on TIG's Behalf.

It is undisputed that during the relevant time period, TIG, an insurance company, provided

workers' compensation insurance policies as well as reinsurance of such policies issued by other

insurance companies, to various employers throughout the United States.  (Complaint ¶ 5; Answer

¶ 5; Aon Re MSJ Response at 3-4).  According to TIG, approximately twenty-five percent of its

---

[1]  The facts are derived from the parties' pleadings and the evidence contained in the summary judgment record.  Unless characterized as a contention by one of the parties, these facts are undisputed.

1

reinsurance business in 1998 was from Virginia Surety Company ("Virginia Surety")."  (Complaint;
TIG MSJ App., Ex. 3).  At the time in question, TIG had the usual practice of retaining liability for
individual workers' compensation claims up to a cap of $1,000,000.00 and also purchased excess loss
reinsurance to cover claims exceeding this amount.  (Complaint; Answer; Aon Re MSJ Opp. App.
12, 17-19, 22-24, 47-48).

In December 1997, TIG maintains the company decided to obtain additional reinsurance in
order to reduce its liability per claim to a sum below $1,000,000.00, and it retained Aon Re to act
as its reinsurance intermediary "in connection with the solicitation, placement, negotiation and
administration of reinsurance covering TIG's workers' compensation business."  (TIG MSJ at 5;
Complaint; Answer; Aon Re MSJ Response App. at 12-13, 27).  As part of this process, TIG alleges
that it provided Aon Re with relevant information, including certain historical loss information, and
its business with Virginia Surety, communicating the information to Aon Re's actuaries located in
Chicago, Illinois, who then transmitted the information to the Aon Re San Francisco, California
office.  (TIG MSJ App., Ex 19, Deposition of Sheila Bohuslav, 39, 40 (Washburn Letter)).

Five months after being retained as TIG's reinsurance intermediary, at TIG's request, Aon
Re forwarded the following information to "several prospective reinsurance markets, including WEB
Management LLC ("WEB"), a managing general underwriter that acted as the agent for, *inter alia*,
United States Life Insurance Company ("US Life")": (1) a packet of 1998 underwriting information,
(2) an electronic diskette of insurance premium information, and (3) an electronic diskette entitled
"Claims [that] include[d] losses excess of $15,000" (the "Claims Diskette").  (Complaint; Answer;
TIG MSJ App. Ex. 3; Aon Re MSJ App. at 3, 11, 272-371; Aon Re MSJ App. at 3, 11, 272-371)).
In its May 5, 1998 cover letter to WEB sent along with the above information, Aon Re allegedly

2

stated that the Claims Diskette contained "Virginia Surety [loss data] since 1994." (Answer, Complaint; TIG MSJ App. Ex. 3). Aon re claims that the "electronic information that was provided for the Virginia Surety segment was less extensive; it was only for losses in excess of $15000, and it was merely provided as a courtesy, as the paper information was more than sufficient for a prospective reinsurer to prepare a quote for coverage." (Aon Re Opp. Brief; Aon Re MSJ Opp.  App. at 48-49).  In accordance with TIG's policies, Aon Re claims that it also provided a complete copy of the packet of materials to TIG for its files.  (Aon Re MSJ Response at 6; Aon Re MSJ App. at 129-30, 139-41, 156-57, 373).  Following the transfer of information from Aon Re to WEB, Aon Re negotiated an agreement "to reinsure TIG's workers' compensation business in the layer $900,000 xs $100,000" (the "Reinsurance Treaty").  (TIG MSJ at 6; Complaint; Answer).  The individuals who specifically handled the negotiation of the Agreement were Sheila Bohuslav at Aon Re (TIG MSJ App. Ex. 32 (Deposition of Robert BIMA) and Robin Ekwall at WEB (TIG MSJ App. Ex. 29 (Deposition of Robin Ekwall)).  The final agreement was signed by TIG on October 6, 1998 and by WEB on US Life's behalf, on November 12, 1998 to be affective retroactively to April 1, 1998. (Complaint; Answer; Aon Re MSJ App. at 427).  TIG terminated the Reinsurance Treaty terminated on January 1, 1999.  (TIG App., Ex. 4).  Aon Re, as TIG's agent, allegedly received a 5% brokerage commission on all of the premiums TIG paid to U.S. Life – amounting to over $1,000,000.00.  (Complaint; Answer).

Aon Re avers that Jay Chase ("Chase"), TIG's vice president in charge of TIG's workers' compensation division, reviewed a May 13, 1998 letter from TIG's actuary, Monty Washburn ("Washburn") criticizing the quality of Aon Re's reinsurance submission (Aon Re MSJ App.  at 35-37, 62-63), and specifically commented in an email on June 19, 1998 that he "want[ed] to make sure

the data AON sent the market [was] good" because WEB's quote was so much lower the other competitor vying for the business at that point, Swiss Re.  (*Id.* at 379).

**B.**    **US Life Suspends Payment of TIG Claims and the Parties Begin the Arbitration Process.**

US Life made the decision to suspend payment on all losses submitted by TIG under the Reinsurance Treaty some time in 2002.  (Complaint; Answer).  As a result, TIG sought to arbitrate its claims under the Reinsurance Treaty's arbitration clause.  (*Id.*).  During the arbitration process, the parties participated in discovery and both TIG and non-party Aon Re produced documents relating to the Reinsurance Treaty.  (Complaint; TIG MSJ App. Ex. 5 (Declaration of Bryan O'Sullivan, 6).  The materials produced by Aon Re allegedly revealed that the Claims Diskette given to WEB by Aon Re allegedly did not contain data pertaining to Virginia Surety losses.  (TIG MSJ at 8; TIG MSJ App. Ex. 22).  TIG and US Life conducted discovery, including depositions and pre-hearing briefing, and Aon Re, a non-party to the Arbitration, was also required to produce documents.  (TIG MSJ App. Ex. 5 (Declaration of Bryan O'Sullivan).

**C.  The Arbitration.**

The Arbitration proceeding took place in New York City, New York on April 12-15 and April 26-28, 2004.  (*Id.*).  During the Arbitration, US Life alleged that it had the right to rescind the Reinsurance Treaty because Aon Re had provided it with "materially incomplete" loss data by omitting "the loss data for the entire Virginia Surety segment," which comprised a quarter of the business.  (TIG MSJ App. Ex. 7-9 (Arbitration Briefing and Hearing Transcript).  TIG disputed the assertions that the data was missing and that it was material, but the Arbitration Panel found in favor of US Life, and specifically held in its findings of fact that Aon Re, as TIG's agent, had omitted the

4

information, and that US Life's rescission was warranted. (Arbitration Interim Final Award, May 5, 2004, TIG MSJ App. Ex. 13). In its Final Award of May 17, 2004, the Arbitration Panel incorporated the Interim Final Award and the Final Award was ultimately confirmed by the Supreme Court of the State of New York, New York County on July 30, 2004. (TIG MSJ App. Ex. 15).

Aon Re claims that TIG and US Life "agreed to blame Aon Re in the Arbitration." (Aon Re MSJ Response at 8). According to Aon Re, TIG and US Life "suggested to the arbitrators that if the panel found in favor of US Life with respect to its claims, it should make clear in the award that the rescission [by US Life] was the result of alleged wrongdoing by Aon Re, rather than any wrongdoing by either of the parties to the Arbitration." (*Id.*; Aon Re MSJ App. at 49, 51, 53, 63).

### D.   TIG's Lawsuit Against Aon Re.

TIG filed the instant lawsuit against Aon Re in the Northern District of Texas on June 15, 2004, claiming negligence, negligent misrepresentation, breach of fiduciary duty, and common law indemnity, and also seeking declaratory relief regarding Aon Re's obligation to reimburse and indemnify TIG for unreinsured liability and requesting attorneys' fees. *See generally*, (Complaint). TIG initially moved for partial summary judgment on November 22, 2004, but, following discovery, upon leave of Court, withdrew that motion and filed a new motion for partial summary judgment on June 7, 2005. That same day, Aon Re filed a motion for summary judgment on the entirety of TIG's claims against it. The Court will discuss each of the claims separately below.[2]

---

[2]   Both parties have objected to various affidavits and evidence that the other has submitted with their respective briefing in support of the motions for summary judgment or responses thereto. Because the Court has found it unnecessary to rely upon the great majority of the challenged testimony, it declines at this time to consider each of the objections and instead addresses specific objections to those portions of the disputed evidence the Court regards as relevant to the resolution of particular summary judgment issues. The remainder of the parties'

## II. ANALYSIS

**A.    Legal Standard.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

**B.    Whether Collateral Estoppel May Be Applied Against Aon Re.**

**1.    Legal Standard.**

The Court first addresses TIG's assertion that the collateral estoppel doctrine applies in this case to bar relitigation of issues decided in the Arbitration. (TIG MSJ at 12); *Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. 2001) (holding that collateral estoppel must be analyzed as to the particular litigation, and finding that the doctrine precludes relitigation of issues by a party or those in privity with the party); Aon Re MSJ Response at 10). Collateral estoppel is used when a federal court gives preclusive effect to a state court judgment. Because the Arbitration Award was issued in New York and ultimately affirmed by a New York court, the Court must use New York law to determine

respective objections are DENIED as moot.

whether collateral estoppel should apply to that judgment.  *Matter of Gober*, 100 F.3d 1195, 1201

(5th Cir.1996) (holding that the full faith and credit statute requires courts to "look to the state that

rendered the judgment to determine whether the courts of that state would afford the judgment

preclusive effect.") (citing 28 U.S.C. § 1738); *see also United States ex rel. Laird v. Lockheed Martin*

*Engineering & Science Services Company*, 336 F.3d 346, 357 (5th Cir.2003) (same); (TIG MSJ at 12,

n. 8); Aon Re MSJ Resp at 10-11).

Under New York law, collateral estoppel precludes a party "from relitigating an issue which

has been previously decided against him in a prior proceeding where he had a full and fair

opportunity to litigate such issue." *Luscher ex rel. Luscher v. Arrua*, 801 N.Y.S.2d 379, 381 (N.Y. Sup.

Ct.  2 Dept., slip op.) (citing *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634; *Kaufman*

*v. Lilly & Co.*, 65 482 N.E.2d 63; *Schwartz v. Public Administrator of County of Bronx*, 246 N.E.2d

725)). "The two elements that must be satisfied to invoke the doctrine of collateral estoppel are that

(1) the identical issue was decided in the prior action and is decisive in the present action, and (2)

the party to be precluded from relitigating the issue had a full and fair opportunity to contest the

prior issue." *Id.*  (citations omitted).

### 2.    Whether Aon Re Had a Full and Fair Opportunity to Litigate the Issues at the Arbitration Proceeding.

TIG argues that Aon Re "should be collaterally estopped from relitigating the findings set

forth in the Award" because the "issues decided in the Arbitration – *i.e.*, Aon Re's wrongdoing in

the placement of the Reinsurance Treaty – are identical to the issues raised by TIG's claims against

Aon Re in this action." (TIG MSJ at 13).  The result of the application of collateral estoppel to the

issues decided in the Arbitration, according to TIG, is a determination in TIG's favor on each of its

claims of negligence, breach of fiduciary duty, and common law indemnity against Aon Re. (*Id.*).

Before examining the first factor, identity of issues, the Court will address whether Aon Re had a full and fair opportunity to litigate the issues in the arbitration, because this factor is determinative of the application of collateral estoppel in the instant case. Under New York Law, "A 'full and fair opportunity' requires identity of parties or 'privity' of parties, and 'a practical inquiry into 'the realities of the [previous] litigation.'" *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, 2004 WL 724690, at *8 (S.D.N.Y. March 26, 2004) (citing *Gilberg v. Barbieri*, 53 N.Y.2d at 292 (citations omitted). Aon re argues that as a non-party to the arbitration, its interests were not adequately represented in the Arbitration and therefore the Arbitration cannot have a preclusive effect on the instant proceedings. *See, e.g.*, (Aon Re MSJ Response at 10-11).

New York law mandates that TIG must establish that Aon Re was in privity with TIG in order for collateral estoppel to apply. *See, e.g.*, Gilberg, 53 N.Y.2d at 291 (citations omitted). Under New York law, Courts examining the question of whether privity exists should consider "all of the facts and circumstances of the party's and nonparty's actual relationship, their mutuality of interests and the manner in which the nonparty's interests were represented in the prior litigation establishes a functional representation such that 'the nonparty may be thought to have had a vicarious day in court.'" *Mario Valente Collezioni, Ltd.*, 2004 WL 724690, at *8 (citing *Slocum on Behalf of Nathan A v. Joseph B*, 588 N.Y.S.2d 930, 931 (App. Div.1992) (quoted in *Conan v. Ernest Cordelia*, P.C., 2001 WL 856606 at * 8 (S.D.N.Y. July 30, 2001)).

Aon re cites a number of cases for the proposition that because it was a non-signatory to the Reinsurance Treaty containing the arbitration provision and was not a party to the arbitration, it was not in privity with TIG for purposes of the collateral estoppel analysis. *See generally*, (Aon Re MSJ;

8

Aon Re Response, Aon Re Reply); *see also, e.g.*, *Paulo v. Meyerson*, 1999 WL 126391, at *3 n.3 (S.D.N.Y. June 13, 1991) (affirming Magistrate's decision under New York law to refuse application of collateral estoppel against a party who did not sign the arbitration agreement at issue). TIG, however, urges the court to apply an exception to this general rule, arguing that Aon Re was indeed in privity with them as a result of the parties' agency relationship. (TIG MSJ at 17; *Buechel*, 766 N.E.2d at 921; *Cantier v. Marlin Mgt., LLC*, 202 F.3d 89, 94 (2d Cir. 2000).

It its brief, Aon Re recognizes that "those in privity with a party to an arbitration may be bound by an arbitration award in some circumstances," but points out that all "'[doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate." *Buechel*, 766 N.E.2d at 919. TIG claims that, "[as a matter of law, a principal/agency relationship satisfies the privity requirement" with respect to "matters within the scope of the agency relationship." (TIG MSJ at 19) (citing, e.g., *Commonwealth Ins. Co. v. Thomas A. Greene & Co.*, 709 F. Supp. 86, 88-89 (S.D.N.Y. 1989); *Faded v. Cambridge Mut. Fire Ins. Co.*, 274 N.Y.S.2d 235, 239 (N.Y. Sup. Ct. Albany Co. 1966), *aff'd*, 280 N.Y.S.2d 209 (N.Y. 3d Dep't 19767)). TIG reasons that because Aon Re was TIG's agent in the negotiation of the Reinsurance Treaty, collateral estoppel is binding with respect to the above issues which all pertain to that Agreement. (TIG MSJ at 19-21). Aon Re correctly points out, however, that the privity analysis looks to the time at which the Arbitration took place:

> [B]ecause the doctrine of collateral estoppel asks whether a party is bound by the result of a prior judicial proceeding, and thus implicates the due process rights to notice and an opportunity to be heard, the relevant inquiry is the closeness of the relationship *at the time of the prior proceeding*.

(Aon Re MSJ Response at 13 (citing *Stichting Ter Behartiging Van Oudaandeelhouders In Het*

*Kapitaak Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 186 (2d Cir. 2003) (emphasis added)).

Moreover, Aon Re avers that when examining whether a non-party had privity with a party to a prior proceeding, a Court should look to the level of the non-party's "control and participation in the prior proceeding." (Aon Re MSJ Response at 13 (citing *David v. Biondo*, 703 N.E.2d 261, 263-65 (N.Y. 1998); *In the Matter of Juan C.*, 679 N.E.2d 1061 (N.Y. 1997) (same)). Also, Aon Re claims that there was a conflict of interest between TIG and Aon Re during the arbitration, negating the "necessary element of adequate representation" required to establish privity between Aon Re and TIG. (Aon Re MSJ at 14; Aon Re MSJ App. at 49, 51-53) (citing *In re Slocum*, 588 N.Y.S.2d at 932; *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d at 343, 346 (2d Cir. (N.Y.) 1995) (noting that there must be a "substantial identity of incentives" to establish privity). *Id.* at 56 F.3d at 346. The Court agrees.

The summary judgment evidence demonstrates that there is no genuine issue of material fact that collateral estoppel does not apply to bar Aon Re from relitigating those issues litigated in the Arbitration. First, it is undisputed that Aon Re was not a party to the Arbitration and was not a signatory to the agreement to arbitrate between TIG and US Life. *See, e.g.*, (O'Sullivan Decl., TIG App., Ex. 6). Second, TIG has does not dispute that Aon Re was no longer acting as its agent at the time of the Arbitration. *See generally*, (*Id.*; TIG Briefs); Third, although TIG disputes the claim, there is no genuine issue of material fact that TIG and Aon Re had a clear conflict of interest. *See generally*, (Aon Re MSJ App. at 49, 51-53, 61; TIG Briefs; Aon Re Briefs; TIG App., Ex. 7 (US Life Position Statement); TIG App., Ex. 8 (US Life Prehearing Brief; TIG App., Ex. 9 (Arbitration Hearing Trans.); TIG App., Ex. 25 (Interim Final Award); Bima Dep., TIG MSJ App. Ex. 32). Finally, it is undisputed that Aon Re had no "control" over, nor did it participate, in the Arbitration.

10

*See, e.g.* (*Id.*; O'Sullivan Decl., TIG App., Ex. 6; *see also* TIG Briefs).   Because of these factors, Aon Re cannot be said to have been "in privity" with TIG for purposes of collateral estoppel, and  the Court therefore DENIES TIG's motion for summary judgment on the application of collateral estoppel as a matter of law.[3]   Because the Court has found that collateral estoppel does not apply to bar relitigation of those issues decided in the Arbitration, genuine issues of fact remain on the remainder of TIG's claims against Aon Re, and the Court will next address Aon Re's Motion for Summary Judgment on TIG's claims against it.[4]

C.   **Whether Aon Re is Entitled to Summary Judgment on all of TIG's Claims Against It**.

1.   **TIG's Claims.**

(a)   **Counts I, II and III – Negligence, Negligent Misrepresentation and Breach of Fiduciary Duty.**

Aon Re argues that it is entitled to summary judgment on TIG's claims for Negligence and Negligent Misrepresentation and Breach of Fiduciary Duty.   The first argument the Court will address is Aon Re's contention that all three claims are barred by the applicable statutes of limitations.

(b)   **Choice of Law – Procedural Issues.**

The first issue the Court must address is choice of law as it relates to the applicable statutes of limitations.   In this diversity case, the Court must apply the statute of limitations under Texas law

---

[3]  Because the Court has decided this question on this basis, it need not address the question of whether there is an identity of issues between the two proceedings.

[4]  While TIG has other bases for summary judgment, the application of Aon Re's affirmative defense of time barring TIG's claims as a result of applicable statutes of limitation is determinative of the remainder of the motions, the Court will next address that issue.

rather than New York because the Fifth Circuit has held that Texas considers its statutes of limitations to be "procedural." *See, e.g. Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1103, 1111 (5th Cir. 1981). The parties do not dispute that this is the case. *See generally* (TIG Briefs; Aon Re Briefs).

> (c)     **When TIG's Claims for Negligence, Negligent Misrepresentation, and Breach of Fiduciary Duty Accrued for Purposes of the Statutes of Limitations.**

Under Texas law, TIG must bring any claim for negligence or negligent misrepresentation within two years of the date its causes of action accrue. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (2005); *Potter v. Kaufman & Broad Home Sys. of Tex., Inc.*, 137 S.W.3d 701, 705 (Tex. App.–San Antonio 2004, no pet.)(applying two-year statute of limitations to negligence claims); *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Co.*, 20 F.3d 1362, 1372 (5th Cir. 1994) (holding that two-year statute of limitations for negligence claims also applies to negligent misrepresentation claims). TIG's claims for breach of fiduciary duty must be brought within four years of the date they accrued. TEX. CIV. PRAC. & REM. CODE. ANN. § 16.004 (2004). Claims accrue under Texas law "at the time when facts come into existence which authorize a claimant to seek a judicial remedy." *Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1430 (N.D. Tex. 1997) (citing *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex.1977) and *Moreno v. Sterling Drug. Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) ("[f]or purposes of the application of limitation statutes, a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury"). Deciding when TIG's negligence, negligent misrepresentation and breach of fiduciary duty claims accrued is a matter of law for the Court to decide. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001) ("[W]hen a cause of action accrues is a question of law, not fact.")

(citations omitted).

According to Aon Re, "TIG's Negligence, Negligent Misrepresentation and Breach of Fiduciary Duty claims each accrued *on or before* June 26, 1998," when "Aon Re allegedly commited a wrongful act that affected TIG's interests." (Aon Re MSJ at 14) (citing *Murphy v. Campbell*, 964 S.W.2d 265, 270-71 (Tex. 1997); *Resolution Trust Corp v. Acton*, 844 F. Supp. 307, 316-17 (N.D. Tex. 1994) (Sanders, J) (emphasis added). June 26, 1998 is the date TIG entered into the Reinsurance Treaty with US Life. (TIG MSJ App. 13 at 405-406).

TIG claims, however, that it did not suffer a "legal injury" until "February 2003" when TIG first learned that US Life first asserted its alleged right to rescission. (TIG Response at 2). Furthermore, TIG claims that "damages are an essential element for any cause of action, [and that] a cause of action does not accrue until 'a wrongful act causes some legal injury.'" (TIG Response at 3) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996, reh'g overruled), *In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997)).

In *S.V.*, the Texas Supreme Court stated "[as a rule, we have held that a cause of action accrues when a wrongful act causes some *legal injury*, even if the fact of injury is not discovered until later, *and even if all resulting damages have not yet occurred*." *Id.* at 4 (citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex.1994) (emphasis added); *Quinn v. Press*, 140 S.W.2d 438, 440 (1940)). The parties disagree over (1) the definition "legal injury" and (2) whether the causes of action could have accrued if damages had not yet been ascertained. As for the definition of legal injury, in *Acton*, 844 F. Supp. at 316, Chief Judge Sanders of this Court examined a similar

situation.  The plaintiff in *Acton* alleged breach of fiduciary duty, negligence, and gross negligence.[5]
*Id.* at 316-17.  There, as here, the plaintiff averred that the cause of action did not "accrue until the
occurrence of the *loss* attributable to the tort."  *Id.* at 316.  In explaining the time of accrual, Judge
Sanders stated that "the [Plaintiff's] allegations of breach of fiduciary duty, negligence, and gross
negligence all involve acts that *are themselves legal injuries.  At the moment each alleged breach occurred,*
the [Plaintiff] would have suffered enough legal injury to trigger the running of the limitations
period."  *Id.* at 316-17 (emphasis added); *see also Fusco v.  Johns-Manville Prods.  Corp.*, 643 F.2d
1181, 1183 (5th Cir.  1981) (same).

Regarding TIG's assertion that the legal injury could not have occurred on or before the
execution of the Reinsurance Treaty because no damages had accrued, the Fifth Circuit in *Fusco*,
as well as a number of other courts, has clearly stated: "In actions for negligence, the period of
limitations begins to run from the *commission of the negligent act, not from the date of the ascertainment
of damages.*"  *Fusco*, 643 F.2d at 1183); *see also Hunton*, 243 F.  Supp.2d at 703.  ("'Generally, in
Texas negligence actions, the limitations period runs from "the commission of the negligent act, not
the ascertainment of damages."'" (citing *Kansa Reins.  Co., Ltd.  v.  Congressional Mortgage Corp.*, 20
F.3d 1362, 1371 (5th Cir.  1994) ("[A] cause of action sounding in negligence accrues at the time
of the act or omission alleged to constitute the negligence.") (citations omitted).

Finally, TIG argues that it had not suffered a "legal injury" when the Reinsurance Treaty was
entered into the contract was not void but rather "voidable" under Texas law, and it would

---

[5]  "In Texas, negligent misrepresentation claims sound in negligence, not fraud...Consequently,
negligent misrepresentation claims are governed by negligence rules."  *Hunton v.  Guardian Life Ins.  Co.
of Am.*, 243 F.  Supp.2d 686, 703 (S.D. Tex.  2002).

remain in effect "unless and until the complaining party proves its right to avoid it." *See, e.g. Swain v. Wiley Coll.*, 74 S.W.3d 143, 146 (Tex. App.–Texarkana 2002) (discussing the difference between void and voidable contracts).   TIG's argument misses the point, however, in that, as the Court explained above, the statute of limitations began to run on TIG's claims at the time Aon Re allegedly breached its standard of care and fiduciary duty.   Moreover, as in the Fifth Circuit decision in *State Farm Life Ins. Co. V. Swift*, 129 F.3d 792, 800 (5th Cir. 1997), this Court will not find a lack of legal injury merely because TIG could have continued along operating under the contract unimpeded even though the misrepresentation was "unintentional and undiscovered." *Id.*   ("We shall not find a lack of injury merely because the taxpayer may be able to escape liability by continuing to violate the tax laws even if the violation is unintentional and undiscovered.")

For the reasons discussed, the Court finds, as a matter of law, that TIG's claims for negligence, negligent misrepresentation, and breach of fiduciary duty accrued when TIG allegedly forwarded the incorrect information to WEB, but no later than June 1998, when the Reinsurance Treaty was signed by both parties.

### (d)     The Discovery Rule.

There is an exception, however, that TIG argues in the alternative, known as the "discovery rule." Under this exception, courts applying Texas procedural rules "have sometimes held that an action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Id.* (citing *Trinity River Auth.*, 889 S.W.2d at 262). The discovery rule most often applies to fraud and fraudulent concealment claims, neither of which is presently before the court.   *Id.* at 4, 6.   Deferred accrual has, however, been applied in other settings. *Id.* at 5. The Texas Supreme Court held as follows: "the general principle is this: accrual

of a cause of action is deferred in cases of fraud or in which the wrongdoing is fraudulently concealed, and in discovery rule cases in which the alleged wrongful act and resulting injury were *inherently undiscoverable* at the time they occurred but may be *objectively verified.*"  *Id.* at 6.  (emphasis added) (citations omitted).  Whether a legal injury is "inherently undiscoverable" depends upon the "nature of the injury," "the circumstances in which it occurred and plaintiff's diligence...and is by nature unlikely to be discovered within the prescribed limitations period despite due diligence."  (*Id.*)

"Because the primary purpose of the statute of limitations is to require the plaintiff to bring an action while the defendant has a fair opportunity to find witnesses with the facts still fresh in their minds, and because the discovery rule undercuts this purpose, the discovery rule is generally narrowly construed" – only when it is difficult for the injured party to discover the injury.  *Gillespie v. Fields*, 958 S.W.2d 228, 230 (Tex. App.–Tyler 1997, writ denied) (citing *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex.1977)).  Aon Re bears the burden of showing that there is no genuine issue of material fact regarding whether the discovery rule applies, and the determination of whether the rule applies is an issue of law for the Court to decide.  *Id.*; *see also Ellert v. Lutz*, 930 S.W.2d 152, 155-57 (Tex. App.–Dallas 1996, no writ).  Mere preclusion of legal remedy for TIG, however, is not enough to justify application of the discovery rule.  *See Robinson*, 550 S.W.2d at 20.

Aon Re argues that TIG's claim for negligent misrepresentation is time barred as a matter of law, as the discovery rule cannot be applied to negligent misrepresentation claims.  (Aon Re MSJ; Aon Re Reply at 8-10) (citing *Kansa*, 20 F.3d at 1371-72; *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp.2d 686, 703 (S.D. Tex. 2002); *Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 715 (S.D. Tex. 2001)).  Moreover, as for TIG's negligence claims, "[t]raditionally, Texas courts have applied the discovery rule to negligence actions only in extremely rare and unusual circumstances."

16

*Hunton*, 243 F. Supp.2d at 703 n. 28.

Finally, as for TIG's breach of fiduciary duty claim, although courts have, on occasion, applied the discovery rule to such claims, they have done so only when the "person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." This is not the case here.

The facts demonstrate that the alleged legal injury was not "inherently undiscoverable." Chase, TIG's Executive Vice President, who Aon Re alleges was "most directly responsible for obtaining reinsurance for TIG's workers' compensation business," mentioned that he had doubts about whether the electronic loss data forwarded to the reinsurance market was "good." (Aon Re MSJ App. at 379; 400; Chase Dep., *Id.* at 138-39). Additionally, he allegedly complained that "Aon Re had done a 'very poor job' in preparing the Reinsurance Submission. (Aon Re MSJ App. at 37-38). TIG also allegedly went against its own stated usual practice in requesting that Aon Re forward the information to US Life without reviewing it first itself. (Aon Re MSJ App. at 143-44, 153-55, 393-94); *Armstrong v. Am. Home Shield Corp.*, 333 F.3d at 566, 570 (5th Cir. 2003) (holding that "the source of information which underlies a cost quotation" is "precisely the type[] of information that a seller involved in a substantial business transaction would seek to discovery and could discover through the exercise of reasonable diligence."). While Chase claims that he instructed Monty Washburn to follow up on his concern, a claim Washburn denies, (Aon Re MSJ App. at 154-155, 257, 395), it is undisputed that TIG did not inspect the electronic information on the diskettes Aon Re sent to the market and to WEB. (Aon Re MSJ App. at 154-55, 395, 248-50).

"The discovery rule is not applied in Texas so as to excuse a party from the exercise of reasonable diligence in protecting his own interests...." *LaRue v. GeneScreen, Inc.*, 957 S.W.2d 958,

(Tex. App.–Beaumont 1997, pet. denied) (citations omitted). After reviewing all of the facts and surrounding circumstances, the Court agrees with Aon Re that there is no genuine issue of material fact that TIG did not exercise reasonable diligence because (1) Chase instructed a subordinate to review the electronic data but did not follow up with him, and (2) neither Washburn, nor anyone else at TIG, examined the data.

Moreover, US Life suspended payments in the summer of 2001, and TIG still failed to conduct an investigation into the reasons US Life claimed the Reinsurance Treaty was unenforceable, waiting over two years to file its lawsuit against Aon Re. The Court finds that TIG's negligent misrepresentation, negligence, and breach of fiduciary duty claims are not the type of inherently undiscoverable claims to which the discovery rule should apply.[6] For the reasons discussed, the Court finds that the discovery rule does not apply to any of TIG's claims and that there is no genuine issue of material fact that the applicable statutes of limitation bar TIG's negligence and negligent misrepresentation claims and its claim for breach of fiduciary duty as a matter of law. The Court therefore GRANTS Aon Re's motion for summary judgment against TIG on those claims.

### (e)      Count IV – TIG's Claim for Common Law Indemnity.

In addition to the aforesaid claims, TIG asserts a cause of action for common law indemnity against Aon Re. Aon Re, however, argues that this claim must fail as a matter of law because TIG did not pay any damages to US Life. (Aon Re MSJ at 22). TIG's indemnity claim is defined under Texas law as "the payment of all of plaintiff's damages by one tortfeasor to another tortfeasor who

---

[6] Additionally, as Aon Re points out, "TIG's claim[s] accrued" "at the very least" "when it had the right to bring suit" when US Life stopped paying claims in 2001. (Aon Re Reply at 8 (citing *Murphy v. Campbell*, 964 S.W.2d 265, 273).

had paid it to the plaintiff." *Beech Aircraft Corp v. Jinkins*, 698 S.W.2d 722, 724 (Tex. App.–Houston [1st Dist.] 1985), *aff'd*, 739 S.W.2d 19) (citing *Hodges*, CONTRIBUTION AND INDEMNITY AMONG TORTFEASORS, 26 Tex.L.Rev. 150, 151 (1947)).  Common law indemnity is extremely rare and "[o]nly a vestige of common law indemnity remains." *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984), *receded on other grounds, Barr v. Resolution Trust Corp, ex rel.*, 837 S.W.2d 627, 628-29 (Tex. 1992).

In the Arbitration Award, US Life was ordered to pay $15,985,422 and was ordered to return $8,315,896 in Virginia Surety premiums and interest to TIG.  (Aon Re MSJ App. at 30, 88).  TIG, on the other hand, was ordered to return a lesser amount of $5,382,746 in Virginia Surety claims and interest to US Life.  (*Id.*).  US Life was, however, allowed to rescind the Reinsurance Treaty and TIG could not bill US life for current or future claims that would be covered under the Award.  (*Id.*).  Thus, TIG seeks to recover for current and future claims, constituting "benefit of the bargain" damages – those which would allow TIG "to recover the difference between value as represented and the actual value received." *Airborne Freight Corp., Inc. v. C.R. Lee Enter., Inc.*, 847 S.W.2d 289, 295 (Tex. App.–El Paso 1992, writ denied).  As the RESTATEMENT (THIRD) OF TORTS § 22 explains, TIG may only be indemnified "in the amount paid to the plaintiff," and TIG cannot show that it ultimately paid any amount to US Life, since the amount owed by US Life to TIG was greater than the amount owed by TIG to US Life.

Moreover, indemnity is generally (if not exclusively) for those who have become subject to tort liability. *See St. Anthony's Hosp. v. Whitfield*, 946 S.W.2d 174, 177-78 (Tex. App.– Amarillo 1997, writ denied); *Humana Hosp. Corp. v. Am. Med. Systems, Inc.*, 785 S.W.2d 144-45 (Tex. 1990).  In the arbitration, US Life asserted an equitable claim for rescission for fraudulent inducement into

19

the Reinsurance Treaty, not a tort claim.  (Aon Re MSJ App. at 57).  Aon Re urges that this Court should not "expand the law of common law indemnity in Texas by permitting TIG to bring an indemnity claim that Texas courts have not previously recognized."  (Aon Re MSJ at 25) (citing *Aviation of Am., Inc. v. Alexander & Alexander of Tex., Inc.*, 751 S.W.2d 179, 180 (Tex. 1988) (per curiam); *Cypress Creek Util. Serv. Co. v. Muller*, 640 S.W.2d 869, 864 (Tex. 1982).  The Court agrees.  Because there is no genuine issue of material fact that TIG never paid any damages to US Life, TIG's claim for common law indemnity fails as a matter of law, and the Court GRANTS Aon Re's motion for summary judgment on Count V of TIG's Complaint.

(f)     **Count V – TIG's Claim for Derivative Declaratory Judgment.**

In Count V of TIG's Complaint, the Plaintiff requests "a judicial determination that Aon Re is obligated to reimburse and indemnify TIG for all unreinsured liability."  (Aon Re MSJ App. at 17). Because the Court has granted summary judgment on all of TIG's claims against Aon Re (other than attorneys' fees), TIG's request for declaratory judgment does not by itself constitute an "actual controversy."  18 U.S.C. § 2201.  Because there is no justiciable claim remaining, the Court GRANTS Aon Re's motion and DISMISSES TIG's declaratory judgment claim.

(g)     **TIG's Claim for Attorneys' Fees.**

TIG also seeks an award of his attorneys' fees.  Rather than address the issue of attorneys' fees at this time, the Court instructs the parties to confer in an effort to reach an agreement on the issue. If they are unable to agree, the Court instructs TIG to file a brief in support of his motion for attorneys' fees, along with supporting documentation of the amount of fees requested, within thirty days of the entry of this Order.  Aon Re will have twenty days to file a response as well as any objection to the amount of fees

20

## III. CONCLUSION

For the reasons set forth in this order, it is ORDERED that TIG's Motion for Partial Summary Judgment be, and it is hereby DENIED.  It is further ordered that Aon Re's Motion for Summary Judgment be, and it is hereby, GRANTED in its entirety.[7]  All other Relief not set out herein is expressly DENIED.

**SO ORDERED.**

SIGNED November __7th__, 2005

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[7] Finding that Aon Re's affirmative defense of statutes of limitations bars all of TIG's claims against it, the Court need not address Aon Re's other bases for summary judgment.